# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADAM C. WEINSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 08-927-GPM |
| | ) | |
| CITY OF BELLEVILLE and JEFF VERNATTI, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

A hearing was held on June 1, 2009, and, for the reasons expressed on the record, Defendants' motion to bifurcate §1983 *Monell* claims and to stay discovery and trial on those claims and Defendants' motion to dismiss Counts II and III and the official capacity claims of the first amended complaint were denied. The only issue the Court took under advisement was whether the official capacity claims against Defendant Vernatti should be dismissed.

Adam Weinstein filed this action against the City of Belleville, Illinois, and Officer Jeff Vernatti, individually and in his official capacity, in St. Clair County, Illinois, in December 2008. The action was promptly removed by Defendants. Weinstein then filed a first amended complaint on March 4, 2009. He seeks actual and punitive damages and his attorney's fees.

Jurisdiction lies in both 28 U.S.C. § 1331 and 1332. Weinstein presents a federal claim under 42 U.S.C. § 1983; the parties are diverse citizens (Weinstein is a citizen of Missouri; the City of Belleville and Vernatti are both citizens of Illinois) and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

Weinstein, a licensed Emergency Medical Technician ("EMT"), claims that he was at pre-Christmas party with his wife, friends, and co-workers at a bar named Crehan's in Belleville, Illinois, on December 23, 2006. Weinstein wore a black t-shirt with white letters spelling the word "POLICE" across the front and back. At first a long-sleeved green shirt covered the t-shirt, but at some point during the evening, Weinstein took off the green shirt. Sometime later, a waitress told Weinstein that police officers outside the bar wanted to speak to him. When Weinstein went outside, Defendant Vernatti, a Belleville Police Officer, and several other officers allegedly surrounded him and demanded his "credentials." Weinstein alleges that Vernatti "became verbally abusive" by "swearing at him, berating him, and belittling him." (*See* Doc. 18, at para. 83). Vernatti then ordered Weinstein to turn around and put his hands behind his back.

Vernatti arrested Weinstein "for impersonating a police officer" and placed handcuffs on him. Weinstein alleges that Vernatti twisted his wrists in a painful manner, forced him to walk across the parking lot faster than he could with his hands cuffed behind his back, and slammed him against the rear of the police car before placing him in the back of the car. Weinstein claims that he asked Vernatti to loosen the cuffs, but instead, Vernatti tightened them and continued to verbally abuse him in front of his wife, friends, and co-workers. Eventually Vernatti took off the handcuffs and gave Weinstein a non-traffic complaint for an ordinance violation. But Vernatti then ordered Weinstein to take off his t-shirt, which he did, leaving him standing outside in the December cold weather. Vernatti took the shirt and never returned it. Weinstein alleges that the other officers stood by during these events and did nothing.

Based on these facts, Weinstein claims that Vernatti and the City of Belleville violated his

Fourth Amendment right to be free from unreasonable searches and seizures (Count I) and his First Amendment right to free speech (Count II). Weinstein also alleges that Vernatti and the City are liable for malicious prosecution for initiating a criminal proceeding against him without probable cause (Count III).

With respect to the City, Weinstein alleges that it failed to train its police officers in a variety of ways, failed to implement various policies and procedures which would have prevented the police conduct in this case, and failed to hire and supervise competent police officers. Weinstein further alleges that the City had a widespread policy of deliberate indifference to Vernatti's prior improper conduct (other claims of excessive and unconstitutional force by individuals other than Weinstein), and that the City failed to investigate these other allegations and discipline Vernatti. Instead, Weinstein alleges, the City promoted Vernatti and failed to train other officers to "stop, admonish, or report" Vernatti when he engages in unconstitutional conduct. Weinstein sets forth at least thirteen "customs, policies, or practices" of the City that led to the alleged constitutional violation.

Defendants argue that the claims against Vernatti in his official capacity should be dismissed because these claims are duplicative of the claims against the City, citing *Kentucky v. Graham*, 473 U.S. 159 (1985), and *Charles v. Daley*, 846 F.2d 1057 (7th Cir. 1988). Weinstein opposes dismissal of Vernatti in his official capacity.

The Court notes that whether Vernatti was acting under "color of law" is not synonymous with acting in his official capacity as Weinstein's counsel suggested at the hearing. Vernatti was on duty as a police officer at the time of the alleged incident. There is little doubt that he was acting under color of law. A suit against him in his "official capacity" is a suit against the City of Belleville which, under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658

(1978), requires proof of an official policy or custom. Because the City of Belleville is a defendant in the case, this claim is redundant and unnecessary. *See Schmidling v. City of Chicago*, 1 F.3d 494, 495 n.1 (7th Cir. 1993).

Accordingly, the claims against Defendant Jeff Vernatti, in his official capacity only, are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

DATED: 06/02/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge